UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
EFRAIM SETTON AND SARA MINA SETTON
on behalf of themselves and all other similarly
situated consumers,

                    Plaintiffs,

    - against -

COHEN HURKIN EHRENFELD POMERANTZ
& TENENBUM, LLP.,

                    Defendant.
-----------------------------------------------------------X

**MEMORANDUM & ORDER**
12-CV-4102 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

On August 16, 2012, plaintiffs Efraim Setton and Sara Mina Setton ("the Settons") commenced this action against defendant-law firm Cohen Hurkin Ehrenfeld Pomerantz & Tenenbum, LLP ("the Firm"). The complaint alleges that a written notice that the Firm mailed to the Settons as part of a state eviction action violated the Fair Debt Collection Practices Act ("FDCPA"). Before this Court is the Firm's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). For the reasons set forth below, the motion is DENIED.

## BACKGROUND

*I.    The Settons's Allegations and the Relevant Procedural History*

In the original complaint, filed on August 16, 2012, the Settons alleged that the Firm, which represented the Settons's landlord, Mivzah Realty Corp. ("Mivzah"), attempted to collect a debt from the Settons in the form of past-due rent. The Firm sent a letter to the Settons's Brooklyn home, dated May 25, 2011, demanding payment of $2,503.72 by five days after service of that notice ("the five-day notice"). The Settons claimed that the five-day notice ran

afoul of multiple FDCPA provisions, including failing to state that any information obtained from the Settons would be used for the purpose of collecting a debt. (Doc. No. 1.)[1]

On December 27, 2012, the Firm filed its answer. (Doc. No. 9.) In a letter filed the next day, December 28th, the Firm requested a conference before the Court to address its proposed motion to dismiss the complaint on statute-of-limitations grounds. (Doc. No. 10.) The Firm emphasized that, by the Settons's own allegations, the actionable notice was dated May 25, 2011, and the Settons did not commence the instant lawsuit until August 16, 2012 – more than two months after the lapse of the FDCPA's one-year statute of limitations. (*Id.*)

On January 1, 2013, the Settons amended their complaint, alleging that the Firm had "intentionally failed" to send them the five-day notice "as part of its scheme to affect [sic] sewer service and obtain a judgment by default" in the eviction action. (Am. Compl. (Doc. 11) ¶¶ 20, 26.) The Settons maintained that, as a result, the Firm did not "communicate" that five-day notice to them under the FDCPA until the Settons inspected the state-court file in the eviction action, whereupon they learned of the notice for the first time. According to the Settons, this transpired on August 17, 2011 – one day before the statute of limitations expired. (*Id.* ¶¶ 13, 15.)

In the amended complaint, the Settons referred to an affidavit of service that was created and filed during the eviction proceedings. That document, dated May 31, 2012, reflected that the Firm's process server had delivered copies of the five-day notice to the Settons's residence, and mailed copies of the notice to that same address by United States Postal Service ("USPS") Certified Mail, on May 27 or 31, 2011. (*Id.* ¶¶ 17, 21.) The Settons claimed that they never received the five-day notice by mail, that the Firm "never actually used certified mail," and that the document was "patently false." (*Id.* ¶¶ 18, 22, 26.)

---

[1] The Settons brought this action in their individual capacity and as members of a proposed class of all persons that received the same collection letter.

## II. The Current Motion Practice

On August 21, 2013, the Firm moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 24.) The Firm attached several exhibits that included: (1) a notarized affidavit of service evincing that copies of the five-day notice were affixed to the door of the Settons's home on May 31, 2011, and that copies were mailed that same day to the Settons via both first-class and Certified Mail (Doc. No. 24-4); (2) two Certified Mail receipts addressed to Efraim and Sara Setton, which the USPS date-stamped on May 31, 2011 (*id.*); (3) an order to show cause filed by the Settons in the eviction action, dated August 17, 2011 (Doc. No. 24-5); and (4) an August 17, 2011 affidavit of Sara Setton, which had been attached to that order to show cause, alleging, *inter alia*, that she and her husband never received the five-day notice by mail and only learned of the pending eviction upon receiving a Notice of Eviction on August 11, 2011, whereupon their attorney, Levi Huebner,[2] obtained a copy of the "complete file" from the state court clerk's office.[3] (*Id.*)

The Firm raises two arguments in support of its motion to dismiss.[4] First, that the Settons's FDCPA claim is time-barred by the one-year statute of limitations. (Def.'s Mem. of Law (Doc. 24-11) at 8–9.) Second, that the Settons fail to state a claim for relief because the five-day notice was never "communicated" to them as that term is defined under the FDCPA.

---

[2] Huebner also represents the Settons in the instant lawsuit.

[3] The Firm also annexed: (1) a second order to show cause filed by the Settons in the eviction action after Huebner failed to appear in court on the return date for the initial order to show cause (Doc. No. 24-7); (2) an April 3, 2012 stipulation of settlement in the eviction action, so-ordered by a New York City Housing Court judge, in which the Settons acknowledged owing $6,491.62 in unpaid rent to Mivzah (Doc. No. 24-8); and (3) an affidavit from a partner at the Firm stating its practice of sending five-day notices in envelopes that carried the Firm's return address. (Doc. No. 24-9.)

[4] At the pre-motion conference on June 13, 2013, the Court suggested that the Firm direct its proposed motion to dismiss at the original complaint, that the Settons oppose the motion by moving to amend their complaint, and that the Firm argue in its reply, as appropriate, the purported futility of such an amendment. As a result, the Firm argues in its motion that the complaint is time-barred, and that the Court should deny any motion to amend as futile. However, as the Settons emphasize, (Pl.'s Mem. of Law (Doc. No. 25-8) at 2–3), and as addressed in the text *infra*, the Settons lawfully amended their complaint as a matter of course under Fed. R. Civ. P. 15(a)(1)(B). The Court, therefore, is treating the amended complaint as the operative pleading.

3

(*Id.* at 9–14.) Alternatively, the Firm requests that Huebner be disqualified as plaintiffs' counsel because, at a trial, he would likely be called as a witness on a key issue of fact – namely, the timing and circumstances in which the notice was communicated to the Settons. (*Id.* at 15–18.)[5]

The Settons oppose the defense motion. At the outset, the Settons annex several of their own exhibits to their responsive papers. Those exhibits include: (1) an order of a New York City Housing Court judge, dated February 6, 2012, granting the Settons's motion to vacate the default judgment and scheduling a traverse hearing on the issue of service of process (Doc. No. 25-3);[6] (2) a second Housing Court order, dated September 27, 2012, staying the warrant of eviction and setting forth conditions for the Settons's continued occupation of the premises (Doc. No. 25-4); (3) a copy of a receipt for $10,928.31, dated October 5, 2012, received by Mivzah's managing agent from the Settons (Doc. No. 25-5); and (4) unsigned declarations by the Settons stating that they would defer to their attorney, Huebner, regarding the necessity of him being offered as a trial witness. (Doc. Nos. 25-6, 25-7.)

In their responsive memorandum of law, the Settons challenge the authenticity of the Firm's proffered affidavit of service and Certified Mail receipts. They stress, among other things, that the affidavit does not cross-reference the Certified Mail receipt numbers, and that the Certified Mail receipts do not indicate which documents were mailed. The Settons further maintain that the Firm's attorney lacks the requisite personal knowledge to allege that those exhibits pertain to the five-day notice at issue in this lawsuit, and that, at best, such exhibits create a triable issue of fact. The Settons add that the Certified Mail receipts were "never

---

[5] At the June 13th conference, the Court raised the propriety of Huebner's continued representation in light of his prospective role as a witness. The parties subsequently submitted letter briefs on the matter. (*See* Doc. Nos. 19–21.)
[6] Under New York law, a defendant's sworn denial of receipt of service rebuts the presumption of proper service established by a process server's affidavit and necessitates an evidentiary hearing. *See Old Republic Ins. Co. v. Pacific Financial Services of America, Inc.*, 301 F.3d 54, 57–58 (2d Cir. 2002) (citing *Skyline Agency, Inc. v. Ambrose Coppotelli, Inc.*, 117 A.D.2d 135 (2d Dep't 1986)).

produced in the Underlying Matter" and were not part of the record in the eviction litigation. (Pl.'s Mem. of Law (Doc. No. 25-8) at 5 n.6.)[7] On the law, the Settons contend that their lawsuit is timely, (*id.* at 10–11), and that disqualifying their attorney would be both unnecessary and unduly prejudicial. (*Id.* at 14–17.)[8]

## THRESHOLD PROCEDURAL ISSUES

*I.    The Amended Complaint*

Initially, the parties disagree about which pleading is operative: the original complaint filed on August 16, 2012, or the amended complaint filed on January 2, 2013. The Firm argues that the Settons amended their complaint without obtaining permission from the Court, and that, consequently, the amended complaint is only a proposed pleading subject to the Court's decision on whether granting leave to amend would be futile. The Settons counter that they amended as-of-right within the allotted timeframe under the Fed. R. Civ. P. 15(a). The Settons are correct.

Fed. R. Civ. P. 15(a) provides that a plaintiff may amend his or her complaint once as a matter of course. That right can be exercised within twenty-one days after serving the complaint, or, if the pleading is one to which a responsive pleading is required – which is true in this case – twenty-one days after service of the responsive pleading. *See* Fed. R. Civ. P. 15(a)(1).

Here, the Settons filed their original complaint on August 16, 2012, (Doc. No. 1), and served the Firm on December 24, 2012. (Doc. No. 8.) On December 27, 2012, the Firm filed its answer, and then filed a letter on December 28th requesting a pre-motion conference regarding its proposed motion to dismiss on statute-of-limitations grounds. (Doc. No. 10.) On January 2,

---

[7] The Settons emphasize that the Housing Court ordered a traverse hearing on the service of process issue, which purportedly meant that the Housing Court "found as a matter of law that a triable issue of fact regarding service existed." (Pl.'s Mem. of Law (Doc. No. 25-8) at 7, 11.)
[8] On October 16, 2013, the Firm filed a reply reiterating its arguments. (Doc. No. 26.)

2013 – less than twenty-one days after the Firm's answer – the Settons filed their amended complaint. (Doc. No. 11.)

Because the Settons's original complaint was one to which a responsive pleading was required, the Settons had the right, under Fed. R. Civ. P. 15(a)(1), to amend their complaint within twenty-one days of the Firm's answer. The amended complaint was therefore properly filed as a matter of course and constitutes the operative pleading before the Court. *See generally Caro v. Weintraub*, 618 F.3d 94, 98 n.6 (2d Cir. 2010).

II.     *The Nature of the Firm's Motion*

The Firm has styled its application as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b). However, the Firm moved for this relief *after* filing its answer. If a defendant brings a motion to dismiss under Fed. R. Civ. P. 12(b) after already having submitted its responsive pleading, the motion is designated a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *See Nat. Ass'n of Pharm. Mfrs. v. Ayerst Labs.*, 850 F.2d 904, 909 n.2 (2d Cir. 1988). Accordingly, the Court will treat the Firm's motion to dismiss as a motion for judgment on the pleadings. *See id.*

## RELEVANT LEGAL STANDARDS

A court reviews motions for judgment on the pleadings pursuant to Rule 12(c) under the same standard as motions to dismiss pursuant to Rule 12(b)(6). *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). "To survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir.2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the nonmoving party. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).

The FDCPA is a consumer-protection statute intended to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. It provides that "any debt collector" who fails to comply with its provisions with respect to any person is liable to such person for damages. 15 U.S.C. § 1692k.[9] Moreover, the FDCPA establishes rules governing the content and form of "communications." A "communication" is the "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

An action to enforce liability under the FDCPA must be commenced within one year of a "violation." 15 U.S.C. § 1692k. An FDCPA violation accrues, at the latest, when a debt collection communication is received. *See Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 n.2 (2d Cir. 1992) (declining to decide whether an FDCPA cause of action accrues upon receipt of debt collection notice or upon date of mailing); *Ehrich v. RJM Acquisitions LLC*, No. 09-CV-2696 (BMC), 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009) (holding that cause of action accrues, at the latest, when consumer receives debt collection communication).

**DISCUSSION**

I.      *"Communication" under the FDCPA*

In this case, the five-day notice was addressed specifically to the Settons: the document stated that they owed overdue rent, and warned them that failure to pay immediately would result in the commencement of summary eviction proceedings. Under these circumstances, the Firm understandably does not argue – nor could it – that that five-day notice fails to embody the "conveying of information regarding a debt" under the FDCPA, 15 U.S.C. § 1692a(2). But the

---
[9] It is undisputed that the Firm is a "debt collector" under the FDCPA.

7

Firm does contend that the Settons's allegations about the manner in which they learned of the five-day notice – namely, that they read the notice only after their attorney showed them the document – does not qualify as a "communication" under the FDCPA. (Def.'s Mem. of Law (Doc. No. 24-11) at 11–12.) The Court disagrees.

As noted above, the FDCPA defines a "communication" as the "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). This is a broad definition, and the alleged manner in which the Settons first read the five-day notice – "indirectly" through the "medium" of their attorney – falls comfortably within that definition. Indeed, in other cases in which an attorney was interposed as an intermediary between a debt collector and a consumer, courts have reached this same conclusion. *See, e.g.*, *Wright v. Phillips & Cohen Associates, Ltd.*, 12-CV-4281 (DRH), 2014 WL 4471396, at *4 (Sept. 10, 2014) (holding that letter directly addressed to debtor by name, but mailed to debtor's attorney, constituted a "communication"); *see also Simon v. FIA Card Services, N.A.*, 732 F.3d 259, 262–63, 265–66 (3d Cir. 2013) (finding that letter and notice sent to debtors' bankruptcy counsel was "communication" within meaning of FDCPA).[10]

Accordingly, the Court finds that the Settons have validly alleged the existence of a "communication" of information under the FDCPA, and rejects the Firm's contrary assertion.

---

[10] In arguing to the contrary, the Firm cites various cases involving communications solely directed at a debtor's attorney or another third party. That is simply not the situation at hand. Indeed, the five-day notice was specifically and solely directed at the Settons, and at no one else. (*See* Def.'s Mem. of Law (Doc. No. 24-11) at 11–12, citing, *inter alia*, *Tromba v. M.R.S. Associates, Inc.*, 323 F. Supp. 2d 424 (E.D.N.Y. 2004) (finding that notice sent by debt collector to debtor's attorney, which contained no language indicating it was also directed to debtor herself, was not "communication" subject to FDCPA; attorney-intermediary between debt collector and debtor, rather than FDCPA, could protect debtor from debt collector's fraudulent or harassing behavior), and *Schuh v. Druckman & Sinel, L.L.P.*, 751 F. Supp. 2d 542 (S.D.N.Y. 2010) (holding that mortgagors failed to establish that purported collection letter was sent to them, in that, although mortgagors had allegedly seen letter at issue, it actually had been sent to title company that assisted in preparation of financing).) *See generally Wright*, 2014 WL 4471396, at *4 (noting that, in "cases where an attorney was found to have been interposed as an intermediary between a debt collector and a consumer," courts have focused on whether "the communication in question was directed 'solely to the debtor's attorney'" and "contain[ed] no threat of forwarding the communication to the debtor [him]self'") (quoting *Tromba*, 323 F. Supp. 2d at 427).

## II. Materials Outside the Amended Complaint

The parties disagree strenuously over *when* any alleged violation of the FDCPA occurred. The Firm insists that, assuming there was a viable "communication" of the five-day notice, it transpired in May 2011, which would render the Settons's lawsuit – filed on August 16, 2012 – untimely by nearly three months. In that regard, the five-day notice was dated May 25, 2011, and the Firm states that, on May 31, 2011, its process server both hand-delivered and mailed copies of that notice to the Settons's residence. The Firm has provided corroboration in the form of documentary evidence. Specifically, the Firm has annexed to its memorandum of law an affidavit of service reflecting that, on May 31, 2011, a process server left two copies of the five-day notice at the Settons's Brooklyn residence. The Firm has also submitted, significantly, two Certified Mail receipts for items mailed to Sara and Efraim Setton at that same address; the USPS date-stamped those receipts on May 31, 2011. The Firm argues that, in light of this evidence, the statute of limitations commenced no later than May 31, 2011, and that the Settons's cause of action – filed months after the lapse of the one-year statutory clock – is time-barred. (Def.'s Mem. of Law (Doc. No. 24-11) at 8–9.)

The Settons allege, in response, that the Firm deliberately failed to deliver or mail the five-day notice in an effort to thwart the Settons's ability to respond. The Settons claim that the Firm's documentary evidence is bogus – in other words, that the Firm engaged in "sewer service." (Pl.'s Mem. of Law (Doc. No. 25-8) at 4–5). *See Conklin v. Jeffrey A. Maidenbaum, Esq.*, No. 12-CV-3606 (ER), 2013 WL 4083279, at * 7 n.9 (S.D.N.Y. Aug. 13, 2013) (defining "sewer service" as service through which a defendant intentionally fails to serve parties and then falsely affirms to the court that it had effected service); *see also* BLACK'S LAW DICTIONARY (9th ed. 2009) (defining sewer service as "fraudulent service of process on a debtor by a creditor

9

seeking to obtain a default judgment"). The Settons point to affidavits that they had previously submitted in opposing the eviction. In those affidavits, the Settons alleged never to have received the five-day notice by mail or otherwise.[11] According to the Settons, they did not learn of the five-day notice until August 17, 2011, when their attorney, Huebner, showed them the state-court eviction file. The Settons, therefore, peg the FDCPA violation as occurring on August 17, 2011. At a minimum, the Settons urge that whether the Firm actually mailed or delivered the five-day notice is an issue of fact that must be subjected to discovery. (Pl's Mem. of Law (Doc. No. 25-8) at 11.)

The crucial question, from the Court's perspective, is how to treat the Firm's motion in light of the Certified Mail receipts. That is because, while some of the Firm's other exhibits, including the affidavit of service from the eviction lawsuit, were filed as part of those eviction proceedings and are arguably subject to judicial notice, *see Liberty Mut. v. Rotches Pork Packers*, 969 F.2d 1384, 1388 (2d Cir. 1992) (public records subject to judicial notice); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (documents integral to a plaintiff's claim subject to judicial notice), the Certified Mail receipts were apparently never disclosed in the eviction litigation. (*See* Pl.'s Mem. of Law (Doc. No. 25-8) at 6 n.5.)[12]

The Firm requests that, if the Court deems it necessary, the motion to dismiss be converted into one for summary judgment. (Def.'s Mem. of Law (Doc. 24-11) at 7–8.) Pursuant to Fed. R. Civ. P. 12(d), the Court could consider any matters outside the pleadings, such as the Certified Mail receipts, by treating the Firm's motion as one for summary judgment. Rule 12(d) requires that, prior to such conversion, all parties receive notice and "a reasonable opportunity to

---

[11] The Firm annexed those affidavits to its motion to dismiss, and the Settons incorporated them by reference in their response. (*See* Pl.'s Mem. of Law (Doc. No. 25-8) at 5.)

[12] Although the Firm stated generally in its opening legal memorandum that its exhibits were all part of the underlying eviction proceedings, the Settons stressed in their responsive memorandum that the Certified Mail receipts were never previously turned over or filed. The Firm did not contest that assertion in its reply.

present all the material that is pertinent to the motion." *Id.; see Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995) (stating that Rule 12(d) requires "sufficient notice to [the non-moving] party and an opportunity for that party to respond"). The Settons arguably had notice and a reasonable opportunity to present such evidence. The Firm attached extrinsic materials to its motion to dismiss, and specifically referred to the fact that conversion to a summary judgment motion might be necessary in light of its exhibits. (See Def.'s Mem. of Law (Doc. No. 24-11) at 7–8.) The Settons, in turn, responded directly to the defense exhibits in their opposing arguments, and attached affidavits containing new factual assertions beyond the four corners of their amended complaint.

Nonetheless, the Court will not exercise its discretion to convert the Firm's Rule 12(c) motion into one for summary judgment. As explained, the Settons deny that they were served with the five-day notice by mail or otherwise, maintaining that the Firm's paperwork is, simply put, an elaborate fraud. Given these allegations, coupled with the Settons's request for discovery on the issue of service of process, it would be imprudent for the Court to delve into summary judgment analysis at this time. *See, e.g.*, *Car-Freshner Corp. v. D & J Distributing and Mfg., Inc.*, 14-CV-391 (PKC), 2014 WL 3900564, at *3 (S.D.N.Y. Aug. 8, 2014) ("These factual assertions go well beyond the pleadings and any documents integral thereto. . . . They are more appropriately considered after the close of discovery, and the Court declines to convert this Rule 12(b)(6) motion one for summary judgment"); *Kaplan, Inc. v. Yun*, 13-CV-1147 (JGK), 2014 WL 1689040, at *1 (S.D.N.Y. Apr. 30, 2014) ("However, because the parties have not engaged in discovery and the plaintiffs have not had the opportunity to gather and present evidence and argument in opposition to a summary judgment motion, the Court declines to convert the motion into one for summary judgment").Consequently, the Court will not convert the Firm's Rule 12(c)

motion into a motion for summary judgment, and will not consider the Certified Mail receipts at this stage of the lawsuit.

III.    *Disqualification of Plaintiffs' Counsel*

The Firm also seeks an alternative form of relief: for Settons's attorney, Huebner, to be disqualified from the case under Rule 3.7 of the New York Rules of Professional Conduct, commonly referred to as the "witness-advocate rule." However, this matter can be more appropriately addressed if and when Huebner is eventually called to testify at a trial. *See, e.g.*, *Ross v. Blitzer*, 09-CV-8666 (HB), 2009 WL 4907062 (S.D.N.Y. Dec. 21, 2009) (noting that "the witness-advocate rule is concerned with preventing potential taint at trial," and that, where there has been "only limited discovery and it is not yet clear the extent to which an attorney's testimony might be necessary or prejudicial, numerous courts have found that motions to disqualify counsel are premature"); *see also Interpharm, Inc. v. Wells Fargo Bank, N.A.*, No. 08-CV-11365 (RJH) (HBP), 2010 WL 1141201, at *5 (S.D.N.Y. Mar. 25, 2010) (noting that "numerous courts in this District have held that [the advocate-witness rule] addresses [only] counsel's participation at trial, and does not bar counsel's participation in pre-trial proceedings," and, in finding disqualification premature, stating that "[e]ven if the complaint survives Wells Fargo's pending motion to dismiss, the matter is still a long way from trial. Discovery has yet to be completed, and, in all probability, summary judgment motions will have to be resolved before the matter is ready for trial").

## CONCLUSION

For the reasons stated above, the Firm's motion to dismiss the amended complaint (Doc. No. 24) is DENIED. The case is recommitted to Chief Magistrate Judge Steven M. Gold for all pre-trial matters. This Court will leave to the considered judgment of the magistrate judge

12

whether discovery should be limited to the discrete issue addressed herein, or encompass other issues as well.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
September 22, 2014

_____
ROSLYNN R. MAUSKOPF
United States District Judge